IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STA-RITE INDUSTRIES, LLC, F/K/A | § | |
| SHURFLO, LLC, F/K/A SHURFLO PUMP | § | |
| MANUFACTURING COMPANY | § | CAUSE NO. 6:08CV59 |
| | § | |
| V. | § | |
| | § | JURY TRIAL DEMANDED |
| ITT CORPORATION, ITT INDUSTRIES, | § | |
| FLOJET CORPORATION, ITT JABSCO, INC., | § | |
| AND RULE INDUSTRIES, INC. | § | |

## CHARGE OF THE COURT

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

## 1. GENERAL INSTRUCTIONS[1]

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise

---

[1]     *See* Charge of the Court in *Orion IP, LLC v. Mercedes-Benz USA, LLC, et al.* (Civil Action No. 6:05-CV-322), pp. 1-4 (D.E. 574); Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06-CV-272), pp. 1-5 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 1-7 (D.E. 376).

instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## 1.1        Considering Witness Testimony

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or

simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**1.2      How To Examine The Evidence**

Certain testimony in this case has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.  The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence - such as testimony of an eyewitness.  The other is indirect or circumstantial evidence - the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  The law makes no distinction between direct

and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

### 1.2.1   Demonstrative Exhibits[2]

Certain exhibits shown to you are illustrations.   We call these types of exhibits "demonstrative exhibits."   Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.   If your recollection of the evidence differs from the exhibit, rely on your recollection.

### 1.2.2   Limited Purpose or Use of Certain Evidence[3]

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another.   You may consider such evidence only for the specific limited purposes for which it was admitted.

### 1.3       Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - called an expert witness - is permitted to state his or her opinion on those technical matters.   However, you are not required to accept that opinion.   As with any other witness, it is up to you to decide whether to rely upon it.   In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.

## 2. STIPULATIONS

The parties have agreed, or stipulated to the following facts.   This means that both sides agree that these are facts.   You must therefore treat these facts as having been proved.

---

[2]      Fifth Circuit Pattern Jury Instructions—Civil §§ 2.8 (available at http://www.ca5.uscourts.gov/) (modified).

[3]      Fifth Circuit Pattern Jury Instructions—Civil §§ 2.15 and 3.1 (available at http://www.ca5.uscourts.gov/).

(1)     Plaintiff Sta-Rite Industries, LLC is a Wisconsin limited liability company with its principal place of business in Delavan, Wisconsin.

(2)     Plaintiff Sta-Rite Industries, LLC was formerly known as SHURflo, LLC and SHURflo Pump Manufacturing Company.   Plaintiff will be referred to as "SHURflo."

(3)     ITT Corporation is an Indiana corporation with its principal place of business in White Plains, New York.

(4)     Rule Industries, Inc. is a Massachusetts corporation with its principal place of business in Gloucester, Massachusetts.

(5)     Rule Industries, Inc. is a wholly-owned subsidiary of ITT Corporation.

(6)     ITT Corporation sells products under the Flojet name.

(7)     ITT Corporation sells products under the Jabsco name.

(8)     There are six Patents-in-Suit.  Sta-Rite Industries, LLC currently holds all rights and interests in the Patents-in-Suit.

(9)     U.S. Patent Number 5,791,882 ("the '882 Patent") issued on August 11, 1998 and is entitled "High Efficiency Diaphragm Pump."   The patent application that resulted in the issuance of the '882 Patent was filed on April 25, 1996.   The named inventors on the '882 Patent are William V. Stucker, Christopher J. Taylor-McCune, Raffi Pinedjian and Alfonso O. Macias.

(10)    U.S. Patent Number 6,048,183 ("the '183 Patent") issued on April 11, 2000 and is entitled "Diaphragm Pump with Modified Valves."   The patent application that resulted in the issuance of the '183 Patent was filed on February 6, 1998.   The named inventor on the '183 Patent is Humberto Meza.

(11)    U.S. Patent Number 6,050,662 ("the '662 Patent") issued on April 18, 2000 and is entitled "Modular System Board."   The patent application that resulted in the issuance of the '662 Patent was filed on April 22, 1998.  The named inventors on the '662 Patent are Gregory C. Filipek, Steven T. Jersey and Brian Babson.

(12)    U.S. Patent Number 6,305,767 ("the '767 Patent) issued on October 23, 2001 and is entitled "Modular System Board."   The original patent application that resulted in the issuance of the '767 Patent was filed on April 18, 1998.   The named inventors on the '767 Patent are Gregory C. Filipek, Steven T. Jersey and Brian Babson.

(13)    U.S. Patent Number 7,225,936 ("the '936 Patent") issued on June 5, 2007 and is entitled "Comestible Fluid Rack and Rail Apparatus and Method."   The patent application that resulted in the issuance of the '936 Patent was filed on February 4, 2004.  The named inventors on the '936 Patent are Steven T. Jersey, William W. Chung, Larry D. Broyles, Michael D. Henry and Michael R. Smith.

(14)   U.S. Patent Number 5,833,437 ("the '437 Patent") issued on November 10, 1998 and is entitled "Bilge Pump."  The patent application that resulted in the issuance of the '437 Patent was filed on July 2, 1996.  The named inventors on the '437 Patent are Brian J. Kurth, Charles W. Manahan, Anil B. Patel and Kenneth Peterson.

(15)   ITT manufactures and sells the following accused products (the "Accused Products"):

- Flojet Slider Bracket;

- Flojet Model No. 20982-100 Universal Bracket;

- Rule Livewell/Baitwell Pumps 401FC, 403 FC, 405FC, 401 STC, and 405 STC;

- Flojet 3526-144A Diaphragm Pump; and

- Jabsco Diaphragm Pumps Model Nos. 31395-3000, 31395-8000, and 32605-0092.

[**SHURflo Proposed Instruction**:  (16)  SHURflo manufactures and sells the following products:

- SHURflo's Slider Bracket, part no. 21-125;

- SHURflo Universal Bracket Model No. 94-376;

- SHURflo 1700 Series Livewell Pumps;

- SHURflo Model 357-013-10 Livewell Pumps; and

- SHURflo Diaphragm Pumps, Model Nos. 8000-812-288, 2088-422-444, 3091-2214, and 3901-2214.]

[**ITT Proposed Instruction:**   (16)   SHURflo manufactures and sells the following products:

- SHURflo's Snap Fit Base Plate, part no. 21-125;

- SHURflo Modular System Board Model No. 94-376;

- SHURflo 1700 Series Livewell Pumps;

- SHURflo Model 357-013-10 Livewell Pumps; and

• SHURflo Diaphragm Pumps, Model Nos. 8000-812-288, 2088-422-444, 3091-2214, and 3901-2214.]

## 3. SUMMARY OF CONTENTIONS

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

### 3.1        Plaintiff's Contentions

SHURflo contends that ITT makes, uses, offers to sell or sells products that infringe claims 14-15 and 17 of the '882 Patent, claims 10-14 of the '183 Patent, claim 5 of the '662 Patent, claims 18 and 21-23 of the '767 Patent, claims 1-7 of the '936 Patent and claim 11 of the '437 Patent, and that ITT's infringement is willful.  SHURflo asks you to award damages for the infringement.

### 3.2        Defendants' Contentions

ITT contends that it does not infringe any of the Asserted Claims of any of the Patents-in-Suit.  ITT also contends that claims 12-15 and 17 of the '882 Patent, claims 10-14 of the '183 Patent, claims 5 and 6 of the '662 Patent, claims 1, 4, 6-13, 15-18 and 21-35 of the '767 Patent, claims 1-7 of the '936 Patent and claims 1 and 11 of the '437 Patent are invalid as being anticipated by or obvious in light of the prior art and/or for failing to enable and/or provide a written description that satisfies the requirements of the patent laws.  ITT also contends that SHURflo is not entitled to any damages.

### 3.3        Burdens Of Proof[4]

There are two different burdens of proof involved in this case.  The first is the "preponderance of the evidence" standard and the second is the "clear and convincing" standard.

---

[4]       *See* Charge of the Court in *Orion IP, LLC v. Mercedes-Benz USA LLC, et al.* (Civil Action No. 6:05-CV-322), pp. 5-6 (D.E. 574); Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 5-6 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 5-6 (D.E. 376).

SHURflo has the burden of proving infringement by a preponderance of the evidence. The "preponderance of the evidence" standard means that the evidence persuades you that a claim is more likely true than not true.  If the proof establishes that all essential parts of SHURflo's infringement claim are more likely true than not true, then you should find for SHURflo as to that claim.

[**SHURflo's Proposed Instruction:**  If you find that ITT has infringed one or more of SHURflo's patents, you must then determine the damages SHURflo has suffered as a result of ITT's infringement.  SHURflo must prove its damages by a preponderance of the evidence.]

If you find that ITT infringes one or more of SHURflo's patent claims, then SHURflo has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence, which I will define for you.

ITT has the burden of proving invalidity by clear and convincing evidence [**SHURflo's Proposed Insertion:**  because our law presumes that a patent, once issued by the Patent Office, is valid].  [**SHURflo's Proposed Instruction:**  This is a higher standard of proof than the "preponderance of the evidence" standard.]  The "clear and convincing" standard means that the evidence must produce in your minds a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard, but the clear and convincing standard requires a lesser degree of proof than the beyond a reasonable doubt standard, which is used in criminal cases.  If the proof establishes in your mind a firm belief or conviction that ITT's invalidity claims are correct, then you should find for ITT as to such claim or claims.

In determining whether any fact has been proved by either standard, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who

may have called them, and all exhibits received in evidence regardless of who may have produced them.

## 4. CLAIMS OF THE PATENTS IN SUIT[5]

A valid patent gives the owner the right to prevent others from making, using, offering to sell or selling the patented invention within the United States or importing the patented invention into the United States without the patent owner's permission.   The patented invention is described in the claims of the patent.  The claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  The patented invention described in a claim may be a product, such as a machine, or a process for making or using a product.  Each of the claims must be considered individually.  You must use the same meaning given to a claim for both your decision on infringement and your decision on invalidity. Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.  It may be helpful to refer to the copies of the Patents-in-Suit that you have been given as I discuss the claims at issue here.

Claims are usually divided into parts or steps, called "limitations" or "elements."  For example, a claim that describes the patented invention of a table may recite as limitations or elements a tabletop, four legs and glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.

Patent claims may exist in two forms referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this

---

[5]     *See* Charge of the Court in *Orion IP, LLC v. Mercedes-Benz USA LLC, et al.* (Civil Action No. 6:05-CV-322), pp. 8-10 (D.E. 574); Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 9-11 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 6 (D.E. 376).

case, claim 10 of the '183 Patent, claim 5 of the '662 Patent, claim 12 of the '882 Patent, claim 18 of the '767 Patent, and claim 1 of the '936 Patent are independent claims.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each element or limitation of the other claim or claims to which it refers as well as the additional elements or limitations recited in the dependent claim itself.  Therefore, to determine what a dependent claim describes as the patented invention, it is necessary to look at the elements or limitations recited in both the dependent claim and the elements or limitations recited in the other claim or claims to which it refers.  To determine what a dependent claim describes as the claimed invention, the words of that claim and all of the claims from which it depends must be read together.  In this case, claims 14-15 and 17 of the '882 Patent, claims 11-14 of the '183 Patent, claims 21-23 of the '767 Patent, claims 2-7 of the '936 Patent and claim 11 of the '437 Patent are dependent claims.

## 4.1    Construction of the Claims

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you as correct and use those meanings when you decide whether or not the patent claims are infringed, and whether or not they are invalid. The meaning I have given to certain words in the claims appears in Appendix A to this charge. The words in the claims that I have not provided a meaning for you in Appendix A are to be given their ordinary and accustomed meaning as understood by one of ordinary skill in the art.

# 5. INFRINGEMENT[6]

Any person or business entity that, without the patent owner's permission, makes, uses, offers for sale, or sells within the United States any product that meets the description of the patented invention as set forth in at least one claim of a valid patent, before the patent expires, infringes the patent.  Only the claims of a patent can be infringed.  In this case, SHURflo asserts that ITT has made, used, sold, offered to sell or imported products that literally infringe the Asserted Claims of the Patents-in-Suit.  For each ITT product that SHURflo contends is infringed by an Asserted Claim, SHURflo has the burden of proving it is more probable than not that such product includes every element or limitation of the Asserted Claim.

**[ITT's Proposed Instruction:**  Only the claims of a patent can be infringed.  For each ITT product that SHURflo contends is infringed by an Asserted Claim, you must compare that Asserted Claim, using the definitions I have provided, to the ITT products accused of infringement and determine whether or not there is infringement.  You must not compare the ITT products with any specific example set out in the patents.  The only correct comparison is between the product and the language of the claim itself, using the meanings for the words I have given you, or, for the words where I have not given you a meaning, using the ordinary and accustomed meaning as understood by one of ordinary skill in the art.[7]]

In order to find infringement, SHURflo must prove that the requirements for infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of infringement have been proved.  You must consider each Asserted

---

[6]       *See* Charge of the Court in *Orion IP, LLC v. Mercedes Benz USA, LLC, et al.*(Civil Action No. 6:05-CV-322), pp. 11-13 (D.E. 574) ; Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 11-19 (D.E. 658); AIPLA Model Instruction 3.0, 3.1 (2008) (modified); *see also* AIPLA Model Instruction 3.2 (2008) (modified); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 7-10 (D.E. 376).

[7]       Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 8 (D.E. 376).

Claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

**[SHURflo's Proposed Instruction:**  A person or entity can infringe a patent without knowing what it is doing is an infringement of the patent.  It may also infringe even though in good faith it believes what it is doing is not an infringement of any patent.]

**[SHURflo's Proposed Instruction:**  A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells, or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called "direct infringement."]

Direct infringement results if what is accused of infringement is covered by at least one claim of the patent.  A patent claim is directly infringed only if the accused product has each and every element or limitation as described in that patent claim.  If the accused product does not have one of the limitations described in a claim, then that product does not infringe that claim.  For direct infringement, SHURflo is not required to prove that ITT intended to infringe or had actual knowledge of the patent.  A person may be found to be a direct infringer of a patent even if he or she believed in good faith that what he or she was doing was not an infringement of any patent, and even if he or she was not even aware of the patent's existence.

A patent claim is literally infringed only if the ITT accused product includes each and every element in that patent claim, either as I have explained the meaning of that language to you or, if I did not explain it, as its ordinary and customary meaning would be understood by one of skill in the art..  If an ITT accused product does not contain one or more of the limitations recited in a claim, ITT does not literally infringe that claim.  If you find that an ITT accused product

includes each element of the claim, ITT infringes the claim even if the ITT accused product contains additional elements that are not recited in the claim.

You must consider each of the Asserted Claims of the Patents-in-Suit individually, and decide whether the ITT accused product infringes that claim.

**[ITT's Proposed Instruction:** You must be certain to compare the accused product with each claim that such product is alleged to infringe.  Such accused product should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.[8]]

**[SHURflo's Proposed Instruction:**  For each ITT product that SHURflo contends is infringed by an Asserted Claim, you must compare each Asserted Claim, using the definitions I have provided, to the ITT products accused of infringement and determine whether or not there is infringement.  You must not compare the ITT products with any specific example or preferred or commercial embodiment set out in the patents.  The only correct comparison is between the product and the language of the claim itself, using the meanings for the words that I have given you or, for the words where I have not given you a meaning, using the ordinary and accustomed meaning as understood by one of ordinary skill in the art.]

## 6. WILLFULNESS[9]

In this case, SHURflo contends that ITT has willfully infringed the Asserted Claims of the Patents-in-Suit.  If you find on the basis of the evidence and the law as I have explained it that ITT infringes at least one of the Asserted Claims, then you must decide whether not ITT's infringement was willful.

Willfulness is not relevant to your decision of whether or not there is infringement.  It is

---

[8]      Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 9 (D.E. 376).

[9]      Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 13-14 (D.E. 376).

relevant only to the amount of damages, if any, and may, in certain circumstances, entitle the patent owner to increased damages.  But it would be my job to decide whether to award increased damages to a patent owner, after you have rendered a verdict.  You should not consider willful infringement in making your damages award, if any.

[**SHURflo's Proposed Instruction:**  When a person or company becomes aware that a patent may have relevance to its activities, they have a duty to exercise due care and investigate whether or not their products or proposed products infringe any valid claim of the patent.  If they did not do this and are found to have infringed the patent claims, then the infringement was willful.]

To prove willful infringement, a patent owner must prove by the clear and convincing evidence standard that the accused infringer acted with reckless disregard of the claims of the asserted patent.  Willfulness requires you to determine three things:  first, that the accused infringer was aware of the asserted patent, second, that the alleged infringer acted despite an objectively high likelihood that its actions infringed a valid patent; and third, that this objectively high risk was either known or so obvious that it should have been known to the alleged infringer.

[**ITT's Proposed Instruction:**   In deciding whether or not ITT committed willful infringement, you must consider all of the facts, including:

1.      Whether or not ITT possessed a reasonable basis to believe that it has a substantial defense to infringement and reasonably believed that the defense would be successful if litigated, including the defense that the patent is invalid; and

2.      Whether or not ITT made a good faith effort to avoid infringing the patent, for example, for example, the alleged infringer took remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent.

If, for example, you find that ITT possessed a reasonable basis to believe that it had a substantial defense to infringement, or that ITT made a good faith effort to avoid infringing the patent, then you must find that infringement, if any, is not willful.]

**[SHURflo's Alternative Proposed Instruction:** In deciding whether or not the Defendants committed willful infringement, you must consider all of the facts, including, but not limited to, (1) whether or not the Defendants possessed a reasonable basis to believe that it has a substantial defense to infringement and reasonably believed that the defense would be successful if litigated, including the defense that the patent is invalid; (2) whether or not the alleged infringer made a good faith effort to avoid infringing the patent, for example, the Defendants took remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent; (3) whether or not the Defendants obtained and followed the advise of a competent lawyer, and (4) the Defendants' behavior as a party to this litigation.]

## 7. INVALIDITY[10]

ITT contends that the Asserted Claims of the Patents-in-Suit as well as several other claims of the Patents-in-Suit are invalid on a number of grounds.  ITT must prove that a patent claim is invalid by the clear and convincing evidence standard.

For a patent claim to be valid, the invention described in the patent claim must be new, useful and non-obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.  In addition, the patent must comply with certain statutory requirements of disclosure.

The invention claimed in a patent must be adequately described.  In return for the right to prevent others from making, using, selling or offering for sale the patented invention described in

---

[10]    *See* Charge of the Court in *Orion IP, LLC v. Mercedes-Benz, et al. Hyundai Motor America* (Civil Action No. 6:05-CV-322), pp. 14-26 (D.E. 574) ; Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 21-32 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 14-24 (D.E. 376).

the patent claim, the patent owner must provide the public with a description in the patent of the invention and how to make and use it.

**[SHURflo's Proposed Instruction:** Each and every claim of an issued United States patent is presumed valid based upon the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent.]

I will now explain to you each of ITT's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim and each ground for invalidity separately.

## 7.1      Anticipation[11]

For a person to be entitled to a patent, the patent laws of the United States require that an invention must be new. A patent claim is invalid if the invention described in the claim is not new. If an invention is not new, we say that it was "anticipated" by prior art. For a claim to be invalid on the basis of anticipation because it is not new, all of the limitations or elements recited in the claim must be present in a single previous device, or described in a single previous publication or patent that predates the claimed invention. We call previous devices, methods, publications or patents prior art or prior art references. **[SHURflo's Proposed Instruction:** To be a prior art reference for purposes of anticipation, the reference must be in the public domain and not confidential or secret.] ITT must prove by clear and convincing evidence that these items are prior art. The description in a reference does not have to be in the same words as the claim, but all the limitations or elements described in the claim must be there, either stated expressly or necessarily implied or inherent so that someone of ordinary skill in the field of

---

[11]      Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 15-16 (D.E. 376).

technology of the patent looking at that one reference would be able to make and use the claimed invention.

**[SHURflo's Proposed Instruction:**  Something is inherent in an item of prior art if it is always present in the prior art if it is always present in the prior art, or always results from the practice of the prior art.]

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art.  You may not find that the prior art anticipated a patent claim by combining two or more items of prior art.  In determining whether each of the elements of the claimed invention is found in a prior art reference, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the prior art.  **[SHURflo's Proposed Instruction:**  ITT must prove anticipation by clear and convincing evidence.]

Let me now instruct you on two principles of patent law pertaining to the making of an invention – conception and reduction to practice.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that a person of ordinary skill in the field of the technology would be able to reduce the invention to practice without extensive research or experimentation.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

Second, a claimed invention is reduced to practice when it has been tested sufficiently to show that it will work for its intended purpose.  An invention may be reduced to practice even if

the inventor has not made or tested a prototype of the invention. The invention may be reduced to practice by being fully described in a filed patent application.

**[SHURflo's Proposed Instruction:**  As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  ]

**[SHURflo's Proposed Instruction:**  Defendants must prove anticipation by clear and convincing evidence.]

### 7.1.1   Anticipation by Public Knowledge or Use by Another[12]

**[ITT's Proposed Instruction:**  ITT contends that the asserted claims of the Patents-in-Suit are anticipated because the inventions described in those claims were publicly used in the United States by someone other than the inventor before the inventor invented it, or more than one year before the United States patent application was filed.  For the '882 Patent, the filing date is April 25, 1996.  For the '183 Patent, the filing date is February 6, 1998.  For the '662 Patent, the filing date is April 22, 1998.  For the '767 Patent, the filing date is April 18, 1998. For the '936 Patent, the filing date is February 4, 2004.  For the '437 Patent, the filing date is July 2, 1996.]

**[SHURflo's Alternative Proposed Instruction:**  ITT contends that the asserted claims of the Patents-in-Suit are anticipated because the inventions described in those claims were publicly used in the United States by someone other than the inventor before the inventor invented it, or more than one year before the United States patent application was filed.  For the '882 Patent, the filing date is April 25, 1996.  For the '183 Patent, the filing date is February 6, 1998.  For the '662 Patent, the filing date is April 22, 1998.  For the '767 Patent, the filing date is April 18, 1998.  For the '936 Patent, the filing date is February 4, 2004, with a priority date of

---

[12]    AIPLA Model Instruction 6.2 (2008) (modified); J. Davis Model Instructions at 17 (modified); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 16 (D.E. 376).

August 1, 2002.  For the '437 Patent, the filing date is July 2, 1996.]

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person.  Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.  An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.  The absence of affirmative steps to conceal is evidence of a public use.  Secret use by a third party is not an invalidating public use.

**[SHURflo's Proposed Instruction:**  Similarly, if something is only publicly known outside of the United States, then the claim is not invalid.  Defendants must prove anticipation by public knowledge or prior use by clear and convincing evidence.]

### 7.1.2   Anticipation by Prior Sale or Offer for Sale[13]

The sale or offer for sale in the United States of an invention may be prior art to a patent claim describing the invention if the invention was sold or offered for sale more than one year before the application for the patent was filed.  This is known as the on-sale bar.  The date of invention for the patent claims is irrelevant to this category of prior art.

In order for there to be an offer for sale, two requirements must be met.  First, the invention must have been the subject of a commercial offer for sale in the United States.  Even a single offer for sale to a single customer may be a commercial offer, even if the customer does not accept the offer.  The on-sale bar is not limited to sales by the inventor, but may result from sales or offers for sale of a thing by a third party that anticipate the invention.  Second, the invention must be "ready for patenting."  An invention is ready for patenting if the invention for

---

[13]      Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 17-18 (D.E. 376).

sale has been developed to the point where there was reason to expect that it would work for its intended purpose.   The invention may be ready for patenting even if it is not ready for commercial production, or has not been technically perfected.

[**SHURflo's Proposed Instruction:**  Defendants must prove anticipation by prior sale or offer for sale by clear and convincing evidence.]

## 7.1.3   Prior Printed Publication[14]

[**ITT's Proposed Instruction:**  A patent claim is invalid if the invention described by that claim was described in a printed publication before it was allegedly invented by the inventor or more than one year prior to the filing date of the U.S. application.  For the '882 Patent, the filing date is April 25, 1996.  For the '183 Patent, the filing date is February 6, 1998.  For the '662 Patent, the filing date is April 22, 1998.  For the '767 Patent, the filing date is April 18, 1998.  For the '936 Patent, the filing date is February 4, 2004.  For the '437 Patent, the filing date is July 2, 1996.]

[**SHURflo's Alternative Proposed Instruction:**   A patent claim is invalid if the invention described by that claim was described in a printed publication before it was allegedly invented by the inventor or more than one year prior to the filing date of the U.S. application.  For the '882 Patent, the filing date is April 25, 1996.  For the '183 Patent, the filing date is February 6, 1998.  For the '662 Patent, the filing date is April 22, 1998.  For the '767 Patent, the filing date is April 18, 1998.  For the '936 Patent, the filing date is February 4, 2004, with a priority date of August 1, 2002.  For the '437 Patent, the filing date is July 2, 1996.]

Printed publications may include issued patents as well as articles, treatises, and other written materials.  A printed publication will not anticipate a patent claim unless it contains a

---

[14]      AIPLA Model Instruction 6.5 (2008) (modified); J. Davis Model instructions at 17 (modified); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 16-17 (D.E. 376).

description of the invention described by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The date that a printed publication becomes prior art is the date that it becomes available to the public.

So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

[**SHURflo's Proposed Instruction:**  Defendants must prove anticipation by a printed publication by clear and convincing evidence.]

## 7.1.4   Anticipation by Prior Invention[15]

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patent holder, and that other person did not abandon, suppress or conceal the invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed or when

---

[15]    J. Davis Model Instructions at 16.

the invention is made and shown to work for its intended purpose.  Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

[**SHURflo's Proposed Instruction:**  Defendants must prove anticipation by prior invention by clear and convincing evidence.]

## 7.2    Obviousness[16]

[**ITT's Proposed Instruction:**  Not all inventions are patentable even if they are new and not anticipated.  A patent claim is invalid for obviousness if the claimed invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art.  Unlike anticipation, obviousness may be shown by considering more than one item of prior art.[17]]

[**SHURflo's Alternative Proposed Instruction:**  Defendants contend that the various claims of the Patents-in-Suit are invalid because the claimed invention was obvious to one of ordinary skill in the art at the time the invention was made.  A patent claim is invalid for obviousness if the claimed invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.  Unlike anticipation, obviousness may be shown by considering more than one item of prior art.]

The issue is not whether the claimed invention would have been obvious to you as a layman, to me as a Judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the product was made.

[**SHURflo's Proposed Instruction:**  Defendants bear the burden of proving this defense by clear and convincing evidence.  To prove obviousness, ITT cannot use hindsight – that is, they cannot use SHURflo's patent claims as a guidepost, and then pick and choose among the

---

[16]      Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 19-20 (D.E. 376); J. Davis Model Instructions at 18-21.

[17]      Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 19 (D.E. 376).

prior art references to find features that match the elements of the claims.]

You must not use hindsight when comparing the prior art to the invention for obviousness.  In making a determination of obviousness or non-obviousness, you must consider only what was known before the invention was made.  You may not judge the invention in light of present day knowledge or by what you learned from or about the patents during trial.  In placing yourself in the shoes of one of ordinary skill in the art at the time the invention was made, you may also consider whether such a person would have been motivated to combine the prior art references in order to arrive at the claimed invention.

**[SHURflo's Proposed Instruction:**  If the prior art merely discloses numerous possible combinations but gives no direction as to which of these main choices is likely to be successful, this does not constitute a prior teaching or suggestion of the claim combination.  Similarly, if the prior art merely discloses that it would be obvious to explore a new technology or general approach that seemed to be a promising field of experimentation, this would not constitute a teaching or suggestion of the claimed combination.]

**[ITT's Proposed Instruction:**  First, you must decide the level of ordinary skill in the field that someone would have had at the time the invention was made.  Second, you must decide the scope and content of the prior art put into evidence in this case.  Third, you must decide the differences, if any, that existed between the claimed invention and the prior art.  Finally, you should consider any additional considerations relating to the obviousness or non-obviousness of the invention.[18]]

**[SHURflo's Alternative Proposed Instruction:**  First, you must decide the level of ordinary skill in the field that someone would have had at the time the invention was made.

---

[18]     Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 19-20 (D.E. 376).

Second, you must decide the scope and content of the prior art put into evidence in this case. Third, you must decide the differences, if any, that existed between the claimed invention and the prior art.   You must also consider what are referred to as objective indications of non-obviousness.]

I will now describe in detail the specific determinations you must make.

### 7.2.1   Level of Ordinary Skill[19]

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinarily skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

### 7.2.2   Scope and Content of the Prior Art[20]

[SHURflo's Proposed Instruction:   Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by ITT.]

The prior art must be considered with the knowledge of one of ordinary skill in the pertinent art.   The prior art need not explain every detail since it is speaking to those skilled in the art.   Thus, in order to render an invention obvious, the asserted prior art must be sufficient to

---

[19]        AIPLA Model Instruction 7.3 (2008) (modified); *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); J. Davis Model Instructions at 20-22; Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 20 (D.E. 376).

[20]        AIPLA Model Instruction 7.1 (2008) (modified); *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); J. Davis Model Instructions at 20-22; Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 20-21 (D.E. 376).

enable a person of ordinary skill, with his/her background, to practice the invention.  The prior art also must be complete enough to enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.

You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by the patent claims.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem that the invention is asserted to address.

**[SHURflo's Proposed Instruction:**  If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are in separate items, you must then consider whether or not it would have been obvious to combine those items.  A claim is not obvious merely because all of the elements of that claim already existed.  For you to find an asserted claim obvious, you must find that there was some teaching, suggestion, or incentive to combine the items in the prior art into the particular claimed combination.  A suggestion to combine must be clear and particular.  Broad, conclusory statements about the teaching of multiple references standing alone are not evidence of a suggestion to combine.]

## 7.2.3   Differences Between the Invention of the Claims and the Prior Art[21]

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation.  You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of the prior art. [**SHURflo's Proposed Instruction:**  ITT must prove obviousness by clear and convincing evidence.]

---

[21]      AIPLA Model Instruction 7.2 (2008) (modified); *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007); J. Davis Model Instructions at 20-22; Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 21-23 (D.E. 376); Charge of the Court in *Orion IP, LLC v. Mercedes-Benz, et al. Hyundai Motor America* (Civil Action No. 6:05-CV-322), p. 24 (D.E. 574).

Obviousness requires a flexible and common-sense inquiry. Circumstances in which a finding of obviousness may be appropriate include, but are not limited to, the following:

- The claimed invention is merely a predictable variation of the prior art that can be implemented by a person having ordinary skill in the art.

- The claimed improvement over prior art is no more than the predictable use of prior art elements according to their established functions.

- The combination of prior art elements employed in the patent would have been obvious to try by a person having ordinary skill in the art, in light of a known design need or market demand to solve a particular problem.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.

Multiple references in the prior art can be combined to show that a claim is obvious.  Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed.

**[ITT's Proposed Instruction:**  To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effect of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls.  One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.  Teachings, suggestions and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions and motivations may be found in the nature of the problem(s) solved by the claimed invention.  The

fact that a combination was obvious to try may demonstrate that the combination itself was obvious.[22]]

[**SHURflo's Alternative Proposed Instruction:**  In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion in the prior art for a skilled person to make the combination covered by the patent claims.  This requirement can be met by implicit or explicit information.  In other words, the teaching, suggestion or motivation need not be explicit.  You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims.  The question to be answered is:  Would someone regarding the prior art be discouraged from following the path taken by the inventor?]

### 7.2.4   Additional Considerations[23]

[**ITT's Proposed Instruction:**  The next question you must answer, in determining whether or not the invention was obvious at the time it was made, is what evidence there is, if any, of additional considerations relating to the obviousness or non-obviousness of the invention.  You may consider in your analysis any evidence about the following factors:[24]]

[**SHURflo's Alternative Proposed Instruction:**   You must also consider what are referred to as objective indications of non-obviousness.   Some of these indications of non-obviousness are:]

(1)      Whether or not the invention proceeded in a direction contrary to accepted wisdom in the field;

---

[22]       Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 27 (D.E. 376).

[23]       Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 23-24 (D.E. 376); Charge of the Court in *Orion IP, LLC v. Mercedes-Benz, et al.* (Civil Action No. 6:05-CV-322), pp. 25-26 (D.E. 574).

[24]       Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), p. 23 (D.E. 376).

(2)      Whether or not there was long felt but unresolved need in the art that was satisfied by the invention;

(3)      Whether or not others had tried but failed to make the invention;

[SHURflo's Proposed Instruction:  (4)        Copying of the invention by others in the field;]

(5)      Whether or not the invention achieved any unexpected results;

(6)      Whether or not the invention was praised by others;

(7)      Whether or not others have taken licenses to use the invention;

(8)      Whether or not experts or those skilled in the art at the time of making of the invention expressed surprise or disbelief regarding the invention;

(9)      Whether or not products incorporating the invention have achieved commercial success;

[ITT's Proposed Instruction:  (10)     Whether or not others having ordinary skill in the field of the invention independently made the invention at about the same time the inventor made the invention; and

(11)     Other evidence tending to show obviousness or non-obviousness.]

To be relevant to your determination of obviousness, any of these secondary considerations must have a connection, or "nexus," to the claimed invention set forth in the patent claims.  If a secondary consideration is unrelated to the claimed invention, but is instead attributable to something else, such as innovative marketing, then you should not consider it relevant to your obviousness determination.

## 7.3      Written Description[25]

---

[25]      *See* Model Patent Jury Instructions prepared by The National Jury Instruction Project, June 17, 2009, p. 34 (citing *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004)).

ITT contends that claim 11 of the '437 Patent is invalid because the patent fails to provide an adequate written description of the claimed invention.  [**ITT's Proposed Instruction**: ITT must prove that it is highly probable this claim lacked an adequate written description.] [**SHURflo's Alternative Proposed Instruction**:  ITT must prove that this claim lacked an adequate written description by clear and convincing evidence.]

[**ITT' s Proposed Instruction**:  The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention of the claim, even though the description might not use the exact words found in the claim.]  [**SHURflo's Alternative Proposed Instruction**:  The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application in its entirety as originally filed, and using his own knowledge in the field]  The written description is adequate if it shows that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added during the prosecution of the application.  It is not necessary that each and every aspect of the claim be explicitly discussed, as long as a person of ordinary skill would understand that any aspect not expressly discussed is implicit in the patent application as originally filed.  If you find [**SHURflo's Proposed Inclusion**:  by clear and convincing evidence] that claim 11 of the '437 Patent lacked an adequate written description, you must find the claim invalid.

## 7.4    Enablement[26]

ITT contends that claim 18 of the '882 Patent is invalid because the patent does not disclose sufficient information to enable one skilled in the field of the invention, at the time the

---

[26]    *See* Model Patent Jury Instructions prepared by The National Jury Instruction Project, June 17, 2009, p. 35 (citing *AK Steel v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003)).

application was filed, to make and use the claimed invention.  This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.  Each claim must be analyzed for compliance with the enablement requirement.  [**ITT's Proposed Instruction:**  ITT must prove that it is highly probable that the claim was not enabled.] [**SHURflo's Proposed Instruction**:  ITT must prove lack of enablement by clear and convincing evidence.]

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.  ITT bears the burden of establishing lack of enablement by showing that it is highly probable that a person skilled in the art, upon reading the patent document, would not be able to make the invention work without undue experimentation.  The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement.  Factors you may consider in determining whether making the invention would require undue experimentation include:  (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

If you find [**SHURflo's Proposed Inclusion**:  by clear and convincing evidence] that one or more of these claims did not comply with the enablement requirement, you must find each such claim invalid.

## 8.     DAMAGES[27]

[**SHURflo's Proposed Instruction:**  I will now instruct you about the measure of damages.  If you find that ITT has infringed a valid claim of the Patents-in-Suit, then you must determine the amount of money damages ITT must pay to SHURflo for that infringement.  If, on the other hand, you find that ITT has not infringed a valid claim of the Patents-in-Suit, then SHURflo is not entitled to any damages, and you should not make any findings about damages for that claim.

The fact that I am instructing you about damages does not mean that SHURflo is or is not entitled to recover damages.  You should not interpret the fact that I have given instructions about SHURflo's damages as an indication in any way that I believe that SHURflo should, or should not, win this case.  I am instructing you on damages only so that you will have guidance in the event you decide that ITT has infringed and that SHURflo is entitled to recover money from ITT.  SHURflo must prove its damages by a preponderance of the evidence]

[**ITT's Alternative Proposed Instruction:**  I will now instruct you about the measure of damages.  The fact that I am instructing you about damages does not mean that SHURflo is or is not entitled to recover damages.  You should not interpret the fact that I have given instructions about SHURflo's damages as an indication in any way that I believe that SHURflo should, or should not, win this case.  I am instructing you on damages only so that you will have guidance in the event you decide that ITT has infringed and that SHURflo is entitled to recover money from ITT.  If you find that ITT has infringed a valid claim of the Patents-in-Suit, then you must determine the amount of money damages ITT must pay to SHURflo for that infringement.  If, on the other hand, you find that ITT has not infringed a valid claim of the Patents-in-Suit, then

---

[27]     J. Davis Model Instructions at 21-22; *See* Charge of the Court in *Orion IP, LLC v. Hyundai Motor America* (Civil Action No. 6:05-CV-322), pp. 26-29 (D.E. 574) ; Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 33-41 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 24-27 (D.E. 376).

SHURflo is not entitled to any damages, and you should not make any findings about damages for that claim.[28]

## 8.1    Damages – Generally

[**SHURflo's Proposed Instruction:**   The type of patent damages SHURflo is seeking in this case is called a reasonable royalty.  I will discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.]

[**ITT's Alternative Proposed Instruction:**   The type of patent damages SHURflo is seeking in this case is called a reasonable royalty.  I will discuss reasonable royalty later in more detail.]

If you find that any claim of the Patents-in-Suit is infringed and not proven to be invalid, then SHURflo is entitled to damages adequate to compensate for the infringement of that claim in the form of what a reasonable royalty would be for the use made of the invention by ITT. [**SHURflo's Proposed Instruction:**   A damages award should put SHURflo in approximately the financial position it would have been in had the infringement not occurred.]

You may not add anything to the amount of damages to punish ITT, or to set an example.

SHURflo has the burden to persuade you by a preponderance of the evidence that it suffered the damages it seeks.   While SHURflo is not required to prove damages with mathematical precision, it must prove its damages with reasonable certainty.   SHURflo is not entitled to damages that are remote or speculative.

---

[28]      *See* Charge of the Court in *Orion IP, LLC v. Hyundai Motor America* (Civil Action No. 6:05-CV-322), pp. 26-29 (D.E. 574) ; Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 33-41 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 24-27 (D.E. 376).

**8.2     Reasonable Royalty**

A royalty is the amount of money a licensee pays to a patent owner in exchange for the right to make, use or sell the claimed invention.  A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time the infringement began for a license to make the invention.  It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee, assuming that both parties understood the patent to be valid and infringed and that the licensee would respect the patent.  Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the patent and the facts that existed at that time.  Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations.  Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity.  The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  [**SHURflo's Proposed Instruction:** You may also look forward and consider actual developments occurring after the date of the hypothetical negotiation.] Some of the kinds of factors that you may consider in making your determination are:

(1)     whether the patent holder had an established royalty for the invention; in the absence of such a licensing history, any royalty arrangements that were generally used and recognized in the particular industry at that time;

(2)     the nature of the commercial relationship between the patent owner and the licensee, such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3)     the established profitability of the patented product, its commercial success and its popularity at the time;

(4)     whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5)     the size of the anticipated market for the invention at the time the infringement began;

(6)     the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7)     the rates paid by the licensee for the use of other patents comparable to the plaintiffs patent;

(8)     whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his non-patented items;

(9)     the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

(10)    the extent to which the infringer used the invention and any evidence probative of the value of that use;

(11)    the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

(12)    the portion of the profits realized that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13)    the opinion and testimony of qualified experts and of the patent holder; and

(14)    any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The framework which you should use in

determining a reasonable royalty is a hypothetical negotiation between normally prudent business people.

## 8.3    Entire Market Value Rule[29]

The entire market value rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the entire product.  So, if you find that SHURflo has proven that customers demanded an entire accused product because of the patented feature, you may award damages based on the value of the entire product.  However, if you find that customer demand for the product is not based on the patented feature, you should award damages based on the value of the patented feature and not the value of the entire product.

## 8.4    Date Damages Begin[30]

SHURflo can recover damages for infringement that occurred only after SHURflo gave notice of its patent rights, if any.  It is SHURflo's burden to prove by the preponderance of the evidence standard that it gave notice.

SHURflo can give notice in two ways.  The first way is to give notice to the public in general.  SHURflo can do this by ensuring that SHURflo as well as any licensees who use the patented invention placed the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products that were sold that included the patented invention.  This type of notice is effective from the date that SHURflo and any licensees began to mark substantially all of their products that use the patented invention with the patent number.  If

---

[29]      Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware 6.4 (1993) (modified); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc).

[30]      AIPLA Model Instruction 12.1 (2008) (modified); *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc); J. Davis Model Instructions at 32-33 (modified).

SHURflo or its licensees did not mark substantially all of their products that use the patented invention with the patent number, SHURflo did not prove notice in this way.

A second way that SHURflo can provide notice of a patent is to tell ITT that ITT is infringing the patent and to identify ITT's product or products that it claims are infringing.  This type of notice is effective from the date given.

As I said, SHURflo may recover damages only from the time that it gave notice of the patent, either by the marking of products or by telling ITT of the claimed infringement.  If you find that SHURflo did not do either of these before beginning this lawsuit, then SHURflo can only recover damages for infringement, if any, that occurred after it sued ITT on February 26, 2008.

## 9.  INSTRUCTIONS FOR DELIBERATIONS[31]

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

---

[31]     *See* Charge of the Court in *Orion IP, LLC v. Hyundai Motor America* (Civil Action No. 6:05-CV-322), pp. 29-31 (D.E. 574) ; Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 41-42 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 27-28 (D.E. 376).

Remember that in a very real way you are the judges-judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, and other organizations stand equal before the law and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will

always first disclose to the attorneys your question and my response before I answer your question.

> After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.   You may now retire to the jury room to deliberate.

## Appendix A
### Glossary of Patent Terms and Claim Constructions[32]

| Terms | Definition |
| --- | --- |
| Application | The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO"). |
| Claims | Claims are the numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent. |
| Comprising | The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising." "Comprising" means "including" or "containing."  A claim that uses the word "comprising" is not limited to products having only the elements that are recited in the claim limitations, but also covers products that have all of the elements and add additional elements without changing the required limitations.<br><br>    Take as an example a claim that covers a table.  If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.  However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table. |
| License | Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration. |
| Office Action | Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application. |

---

[32]     The Parties  reproduce here the constructions from this Court's claim construction order.  By including the Court's constructions, the Parties do not waive their right to argue on appeal the constructions they advanced during the litigation.  To the extent necessary to preserve their appeal rights, the Parties hereby contend that the jury instructions should include each of the constructions that the Parties advanced during the litigation, but which this Court rejected.

| Terms | Definition |
|---|---|
| Patent Examiners | Personnel employed by the United States Patent and Trademark Office ("PTO") who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable over the prior art considered by the examiner and whether the disclosure adequately describes the invention. |
| Patent Owner | The patent owner may be the original applicant inventor or any assignee who has acquired the patent by an assignment. |
| Prior art | Knowledge of the invention either prior to the invention by the applicant or more than a year prior to the effective filing date of his/her patent application. |
| Prosecution/File history | The written record of proceedings in the United States Patent and Trademark Office ("PTO") between the applicant and the PTO. It includes the original patent application and later communications between the PTO and the applicant.  The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial. |
| References | Prior art patents and publications used to determine patentability. |
| Specification | The specification is the information, which appears in the patent and concludes with one or more claims.  The specification includes the written text, the claims and the drawings.  In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it.  The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention. |
| Ordinary Skill in the Art | From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art."  This hypothetical person is presumed to be of all of the prior art and knowledge that existed in the field during the relevant time period.  The skill of the actual inventor and experts is irrelevant, because they |

40

| Terms | Definition |
|---|---|
| | may possess something that distinguishes them from workers of ordinary skill in the art. Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field. |

| U.S. Patent No. 6,048,183 ||
|---|---|
| **Terms** | **Court's Construction** |
| the ratio, $R_3$, of the difference between the inlet valve center point and the valve plate inlet center point to $R_2$ is at least about 0.15 <br><br> (Claim 10) | the ratio R3 (i.e., the difference between the inlet valve center point and the valve plate inlet center point divided by the ratio R2) is greater than 0.14 |
| $R_2$ is in a range of 1.25 to about 1.45 <br><br> (Claim 11) | the ratio R2 (i.e the value of the inlet valve radius divided by the value of the valve plate inlet radius) is between 1.25 and 1.459999 |
| $R_3$ is in a range of about 0.15 to about 0.40 <br><br> (Claim 12) | the ratio R3 (i.e., the difference between the inlet valve center point and the valve plate inlet center point divided by the ratio R2) is in the range of 0.140001 to 0.409999 |

| U.S. Patent No. 5,791,882 ||
|---|---|
| **Terms** | **Court's Construction** |
| generally annular region <br><br> (Claim 12) | a ring-shaped region or zone circumscribing a pumping member |
| the thickness of the generally annular region increases as the region approaches the pumping member <br><br> (Claim 12) | To show infringement, SHURflo must prove that Defendants' product comprises a ring-shaped region with a pumping member generally within the ringed-area.  The ring-shaped area need not be a perfect circle but one should be able to define radial lines emanating from the pump member and extending like radii through the annular region. For any such radius, when moving along the radius in the generally annular region, the thickness of the generally annular region must increase from a point in the annular region most remote from the pump member, to a point in the annular region most proximate to the pump member.  Furthermore, since the claim states "the thickness of the |

41

|  | generally annular region increases as the region approaches the pumping member," the thickness of the region may not decrease along any such radius.  The Court provides this explanation so that the claim term may neither be interpreted so narrowly as to require a "progressive" thickness increase, nor so broadly as to allow thickness to decrease with radial proximity to the pumping member. |
|---|---|
| **U.S. Patent Nos. 6,050,662/6,305,767** | |
| **Terms** | **Definition** |
| a plurality of different sets of elements<br><br>('662 Patent, Claim 5)<br>('767 Patent, Claims 1, 11, and 18) | two or more sets of elements where no two sets are the same |
| each of said different sets of elements being adapted to at least assist in holding one of a plurality of differently configured pumps to the housing<br><br>('662 Patent, Claim 5)<br>('767 Patent, Claims 1, 11, and 18) | each different set of elements is designed or configured to assist in holding one of the differently configured pumps to the housing |
| Clips<br><br>('767 Patent, Claims 1 and 6) | devices that assist in holding something by gripping it or pushing against it |
| Pin<br><br>('767 Patent, Claims 4, 12, 18) | a device not integral with the housing that assists in holding something by insertion |
| the hole being sized and adapted to receive a portion of a pin<br><br>('767 Patent, Claims 4, 12, 18) | the hole being designed or configured to receive a portion of a pin |
| cavity clip<br><br>('767 Patent, Claim 11) | a device within a cavity that assists in holding something by gripping it or pushing against it |
| at least one hole sized and adapted to receive a fastener therein to secure a pump having the first pump configuration to the housing<br><br>('767 Patent, Claim 27) | one or more holes designed or configured to receive a fastener to secure a pump having the first pump configuration to the housing |
| **U.S. Patent No. 7,225,936** | |
| **Terms** | **Definition** |
| Boss<br><br>(Claim 1) | a three dimensional body or structure extending from the planar body |

42

| lever including a second aperture (Claim 1) | a moveable extension of the bracket including a second hole or aperture |
|---|---|
| adapted to be received (Claim 1) | designed or configured to be received |
| adapted to contact (Claim 1) | designed or configured to functionally engage |
| **U.S. Patent No. 5,833,437** ||
| **Terms** | **Definition** |
| impeller assembly operatively coupled to said motor (Claims 1, 11) | a rotating impeller apparatus coupled directly or indirectly to the pump motor so that they are operable together |

43