IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STA-RITE INDUSTRIES, LLC, F/K/A | § | |
| SHURFLO, LLC, F/K/A SHURFLO PUMP | § | |
| MANUFACTURING COMPANY | § | CAUSE NO. 6:08CV59 |
| | § | |
| V. | § | |
| | § | JURY TRIAL DEMANDED |
| ITT CORPORATION, ITT INDUSTRIES, | § | |
| FLOJET CORPORATION, ITT JABSCO, INC., | § | |
| AND RULE INDUSTRIES, INC. | § | |

**FIRST AMENDED PROPOSED CHARGE OF THE COURT**

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case. After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

1.     **GENERAL INSTRUCTIONS[1]**

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  Answer each question on the verdict form from the facts as you

---

[1] *See* Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 1-3.

find them.  Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### 1.1    Considering Witness Testimony

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because

people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### 1.2     How to Examine the Evidence

Certain testimony in this case has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight as if the witness had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction

between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

### 1.2.1    Demonstrative Exhibits[2]

Certain exhibits shown to you are illustrations.   We call these types of exhibits "demonstrative exhibits."  Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

### 1.2.2.   Limited Purpose or Use of Certain Evidence[3]

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another.  You may consider such evidence only for the specific limited purposes for which it was admitted.

### 1.3        Expert Witnesses[4]

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – called an expert witness – is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.   In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she

---

[2] Fifth Circuit Pattern Jury Instructions – Civil § 2.8 (available at http://www.ca5.uscourts.gov/) (modified)
[3] Fifth Circuit Pattern Jury Instructions – Civil §§ 2.15 and 3.1 (available at http://www.ca5.uscourts.gov/)
[4] *See* Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), p. 4.

testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

2.     **STIPULATIONS**

The parties have agreed, or stipulated to the following facts.  This means that both sides agree that these are facts.  You must therefore treat these facts as having been proved.

(1)     Plaintiff Sta-Rite Industries, LLC is a Wisconsin limited liability company with its principal place of business in Delavan, Wisconsin.

(2)     Plaintiff Sta-Rite Industries, LLC was formerly known as SHURflo, LLC and SHURflo Pump Manufacturing Company.  Plaintiff will be referred to as "SHURflo."

(3)     ITT Corporation is an Indiana corporation with its principal place of business in White Plains, New York.

(4)     Rule Industries, Inc. is a Massachusetts corporation with its principal place of business in Gloucester, Massachusetts.

(5)     Rule Industries, Inc. is a wholly-owned subsidiary of ITT Corporation.

(6)     ITT Corporation sells products under the Flojet name.

(7)     ITT Corporation sells products under the Jabsco name.

(8)     There are six Patents-in-Suit.  Plaintiff currently holds all rights and interests in the Patents-in-Suit.

(9)     U.S. Patent Number 5,791,882 ("the '882 Patent") issued on August 11, 1998 and is entitled "High Efficiency Diaphragm Pump."  The patent application that resulted in the issuance of the '882 Patent was filed on April 25, 1996.  The named inventors on the '882 Patent are William V. Stucker, Christopher J. Taylor-McCune, Raffi Pinedjian and Alfonso O. Macias.

(10)     U.S. Patent Number 6,048,183 ("the '183 Patent") issued on April 11, 2000 and is entitled "Diaphragm Pump with Modified Valves."  The patent application that resulted in the issuance of the '183 Patent was filed on February 6, 1998.  The named inventor on the '183 Patent is Humberto Meza.

(11)   U.S. Patent Number 6,050,662 ("the '662 Patent") issued on April 18, 2000 and is entitled "Modular System Board."  The patent application that resulted in the issuance of the '662 Patent was filed on April 22, 1998.  The named inventors on the '662 Patent are Gregory C. Filipek, Steven T. Jersey and Brian Babson.

(12)   U.S. Patent Number 6,305,767 ("the '767 Patent) issued on October 23, 2001 and is entitled "Modular System Board."  The original patent application that resulted in the issuance of the '767 Patent was filed on April 18, 1998.  The named inventors on the '767 Patent are Gregory C.  Filipek, Steven T.  Jersey and Brian Babson.

(13)   U.S. Patent Number 7,225,936 ("the '936 Patent") issued on June 5, 2007 and is entitled "Comestible Fluid Rack and Rail Apparatus and Method."  The patent application that resulted in the issuance of the '936 Patent was filed on February 4, 2004.  The named inventors on the '936 Patent are Steven T. Jersey, William W. Chung, Larry D. Broyles, Michael D. Henry and Michael R. Smith.

(14)   U.S. Patent Number 5,833,437 ("the '437 Patent") issued on November 10, 1998 and is entitled "Bilge Pump."  The patent application that resulted in the issuance of the '437 Patent was filed on July 2, 1996.  The named inventors on the '437 Patent are Brian J. Kurth, Charles W. Manahan, Anil B. Patel and Kenneth Peterson.

(15)   ITT manufactures and sells the following accused products (the "Accused Products"):

   •   Flojet Slider Bracket ("Flojet Slider Bracket");

   •   Flojet Model No. 20982-100 Universal Bracket ("Flojet Universal Bracket");

   •   Rule Livewell/Baitwell Pumps 401FC, 403 FC, 405FC, 401 STC, and 405 STC ("Rule Livewell Pumps");

   •   Flojet 3526-144A ("Flojet Diaphragm Pump"); and

   •   Jabsco Pump Model 31395-3000, Jabsco 31395-8000, and Jabsco 32605-0092 (collectively, "Jabsco Diaphragm Pumps").

**3.     SUMMARY OF CONTENTIONS**

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

6

### 3.1     Plaintiff's Contentions

In this case, the plaintiff, SHURflo, contends that the Defendants use technology that infringes claims 14, 15, and 17 of the '882 Patent, claims 10-14 of the '183 Patent, claim 5 of the '662 Patent, claims 18 and 21-23 of the '767 Patent, claims 1-7 of the '936 Patent, and claim 11 of the '437 Patent, and that Defendants' infringement willful.   SHURflo asks you to award damages for the infringement.

### 3.2     Defendants' Contentions

Defendants, ITT, Rule, Jabsco, and Flojet (collectively, "ITT"), contend that they do not infringe any of the Asserted Claims of any of the Patents-in-Suit.  ITT also contends that claims 14, 15 and 17 of the '882 Patent, claims 10-14 of the '183 Patent, claim 5 of the '662 Patent, claims 18 and 21-23 of the '767 Patent, claims 1-7 of the '936 Patent, and claim 11 of the '437 Patent are invalid as being anticipated by or obvious in light of the prior art and/or for failing to provide a written description that satisfies the requirements of the patent laws.  ITT also contends that SHURflo is not entitled to any damages.

**Defendants' Proposed Instruction:**[5]

### 3.3     Evaluating Contentions

Invalidity is a defense to infringement.   Therefore, even though the PTO examiner has allowed the claims of the Patents-in-Suit, you, the jury, must decide whether the Asserted Claims of the Patents-In-Suit are invalid as being anticipated by or obvious in light of the prior art and/or for failing to provide a written description that satisfies the requirements of the patent laws.

---

[5]     Model Patent Jury Instructions, Instruction 2.1, at p. 13.

Your job is to decide whether the asserted claims of the Patents-In-Suit have been infringed and whether any of the asserted claims of the Patents-In-Suit are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to SHURflo as compensation for the infringement.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make. I will take willfulness into account later.

**Plaintiff's Proposed Instruction for Section 3.3:**

### 3.3    Burdens of Proof[6]

SHURflo has the burden of proving infringement by a preponderance of the evidence. Preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true.  In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  It will be your job to determine whether SHURflo has met its burden of proving that infringement of the asserted patent claims is more likely true than not true.

ITT bears the burden of proving invalidity by clear and convincing evidence.  Proof by clear and convincing evidence is a greater burden of proof than proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is

---

[6] *See* Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), p. 5.

highly probable.   In determining whether any fact has been shown by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.   It will be your job to determine whether ITT has met its burden of proving the invalidity of the '882, '183, '662, '767, '936, and '437 patent claims.

**Defendants' Proposed Instruction for Section 3.3:**

**3.3     Burdens Of Proof**[7]

There are two different burdens of proof involved in this case.   The first is the "preponderance of the evidence" standard and the second is the "clear and convincing" standard.

SHURflo has the burden of proving infringement by a preponderance of the evidence. When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means the evidence must persuade you that a claim is more probable than not.[8]

If you find that ITT infringes one or more of SHURflo's patent claims, then SHURflo has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the evidence has persuaded you that the claim or defense is highly

---

[7]     *See* Charge of the Court in *Orion IP, LLC v. Mercedes-Benz USA LLC, et al.* (Civil Action No. 6:05-CV-322), pp. 5-6 (D.E. 574); Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 5-6 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 5-6 (D.E. 376).

[8]     Model Patent Jury Instructions, "1.4 Burden of Proof – Preponderance of the Evidence," June 17, 2009, at p. 8.

probable.  Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.[9]

ITT has the burden of proving invalidity by clear and convincing evidence.

In determining whether any fact has been proved by either standard, you should, unless otherwise instructed, consider all of the evidence, including the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

## 4.    CLAIMS OF THE PATENTS-IN-SUIT[10]

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.  Claims are usually divided into parts or steps, called "elements" or "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop.  The tabletop, legs and glue are each a separate element of the claim.

### 4.1    Construction of the Claims

In deciding whether or not the accused technology infringes a patent, the first step is to understand the meaning of the words used in the patent claims.  It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept

---

[9]     Model Patent Jury Instructions, "1.5 Burden of Proof – Clear and Convincing Evidence," June 17, 2009, at p. 9.

[10] *See* Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 5-7.

the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.  It may be helpful to refer to the copies of the Patents-in-Suit that you have been given as I discuss the claims at issue here.

**4.2      Independent and Dependent Claims**

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  It is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claim 10 of the '183 Patent, claim 5 of the '662 Patent, claim 12 of the '882 Patent, claim 18 of the '767 Patent, claim 1 of the '437 Patent, and claim 1 of the '936 Patent are independent claims.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the elements of the other claim to which it refers, as well as the additional elements recited in the dependent claim itself.   In this way, the claim "depends" on another claim.  To determine what a dependent claim covers, it is necessary to look both at the dependent claim and the other claim or claims to which it refers.

When analyzing the validity and alleged infringement of any dependent claim asserted by SHURflo, you must consider all limitations of both the dependent claim and the independent claim from which it depends.  For example, claims 14 and 15 of the '882 Patent are dependent claims of independent claim 12.  Because dependent claim 14 includes all of the limitations of claim 12, if claim 12 of the '882 Patent is not infringed, then claim 14 of the '882 Patent cannot

be infringed.  Similarly, if claim 12 of the '882 Patent is not anticipated, then claim 14 of the '882 Patent cannot be anticipated.

### 4.3      Interpretation of Claims

In deciding whether or not the accused technology does or does not infringe a patent claim, or whether the asserted prior art does or does not invalidate a patent claim, the first step is to understand the meaning of the words used in the patent claims.  The meaning of the words in the patent claims is the same for both the infringement and the validity determinations.

As I stated earlier, it is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  In accordance with that duty, I have interpreted the meaning of some of the language in the patent claims involved in this case.  My interpretation of those claims appears in Appendix A to this Charge.  You must accept the interpretations contained in Appendix A as correct.  The claim language I have not interpreted for you in Appendix A is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the field of technology.

### 4.4      Glossary of Patent Terms

A glossary of patent terms is also contained in Appendix A to this Charge.

## 5.      INFRINGEMENT

**Plaintiff's Proposed Instruction for Section 5[11]**

Any person or business entity that, without the patent owner's permission, makes, uses, sells, or offers to sell a device, or practices a method, that is covered by at least one claim of a patent, before the patent expires, infringes the patent.  A patent owner has the right to stop others

---

[11] *See* Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 7-9 (modified).

from infringing the patent claims during the life of the patent.  In this case, SHURflo asserts that ITT has infringed the Patents-in-Suit.  SHURflo has the burden of proving infringement by a preponderance of the evidence.

Only the claims of a patent can be infringed.  You must consider each claim individually. You must compare each of the asserted claims, as I have defined them, to ITT's accused products, and determine whether or not there is infringement.  You must not compare the accused products with any specific example set out in the patents.

SHURflo has alleged that Defendants infringes the asserted claims directly.  If any person makes, uses, sells, or offers to sell what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called direct infringement.

A patent claim is directly infringed only if the accused system or method includes each and every element in that patent claim.  If you find that the accused system or method includes each element or step of the claim, then that system or method infringes the claim even if such system or method contains additional elements or steps that are not recited in the claim.  If the accused system or method does not contain one or more of the limitations recited in a claim, then that system or method does not directly infringe that claim.  An accused system infringes a claim if it is reasonably capable of satisfying the claim elements, even though it may also be capable of non-infringing modes of operation.

Direct infringement requires a party to perform or use each and every step of a claimed method, literally or under the doctrine of equivalents.  Where no one party performs all of the steps of a claimed method but multiple parties combine to perform every step of the method, that claim will nevertheless be directly infringed if one party exercises control or direction over the

13

entire method so that every step is attributable to the controlling party.  Mere arms-length cooperation between the parties is not enough to establish direct infringement.

A person can directly infringe a patent without knowing that what it is doing is an infringement of the patent.  It may also directly infringe even though in good faith it believes that what it is doing is not an infringement of any patent and even if it did not know of the patent. Infringement does not require proof that the person copied a product or the patent.

SHURflo alleges that ITT literally infringes the asserted claims of the Patents-in-Suit.  A claim limitation is literally met if it exists in the accused system or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as it would be understood by one of skill in the art.

**Defendants' Proposed Instruction for Section 5**:

**5.     INFRINGEMENT:** [12]

You must decide whether ITT has made, used, sold, or offered for sale within the United States, or imported into the United States, a product covered by the Asserted Claims of the Patents-in-Suit.  You must compare each claim to ITT's product to determine whether every requirement of the claim is included in the accused product.

To prove literal infringement, SHURflo must prove that it is more probable than not that ITT's product includes every requirement in SHURflo's patent claims.  If ITT's product omits any requirement recited in SHURflo's patent claims, ITT does not infringe that claim.

---

[12] Model Patent Jury Instructions, "3.2 Direct Infringement – Literal Infringement," June 17, 2009 at p. 16.

For literal infringement, SHURflo is not required to prove that ITT intended to infringe or knew of the patent.

6.      **WILLFULNESS**[13]

In this case, SHURflo argues that ITT willfully infringed the claims of SHURflo's patents.  The issue of willful infringement relates to the amount of damages SHURflo is entitled to recover in this lawsuit.  If you decide that ITT willfully infringed the claims of SHURflo's patents, then it is my job to decide whether or not to award increased damages to SHURflo.  You should not take this factor into account in assessing the damages, if any, to be awarded to SHURflo.

To prove willful infringement, SHURflo must persuade you that it is highly probable that before February 26, 2008, ITT acted with reckless disregard of the claims of SHURflo's patents. To show "reckless disregard," SHURflo must satisfy a two-part test: the first concerns ITT's conduct, the second concerns ITT's state of mind.

When considering ITT's conduct, you must decide whether SHURflo has proven it is highly probable that ITT's conduct was reckless; that is, that ITT proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an unjustifiably high risk that it was infringing the claims of a valid and enforceable patent.  Because this is an objective issue, the state of mind of ITT is not relevant to it.  Legitimate or credible defenses to infringement, even if ultimately not successful, demonstrate a lack of recklessness.

If you conclude that SHURflo has proven that ITT's conduct was reckless, then you need to consider the second part of the test.  You must determine whether SHURflo proved it is highly

---

[13] Model Patent Jury Instructions, at p. 31.

probable that the unjustifiably high risk of infringement was known or so obvious that it should have been known to ITT.  In deciding whether ITT satisfied the state-of-mind part of the test, you should consider all facts surrounding the alleged infringement including, but not limited to, the following:

(1)     Whether ITT acted in a manner consistent with the standards of commerce for its industry;

(2)     whether ITT intentionally copied without a reasonable basis a product of SHURflo covered by one or more claims of the patent, as distinguished from trying to "design around" the patent by designing a product that ITT believed did not infringe those claims.

## 7.     INVALIDITY

**Plaintiff's Proposed Instruction to Section 7[14]**

ITT has challenged the validity of the '882, '183, '767, '662, '936, and '437 patent claims.  ITT must prove that a patent claim is invalid by clear and convincing evidence.  An issued patent is afforded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing a patent.

The "effective filing date" of an application is generally the date that the application was actually filed at the U.S. Patent Office, but in instances with continuation applications, the effective filing date can be earlier.  A continuation application is an application filed during the pendency of a parent application that claims inventions that were disclosed in the parent application and claims the priority date of the parent application.  A claim of priority means that the continuation application is claiming entitlement to the same filing date as the parent

---

[14] *See* Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 11-14.

application, such that the continuation is treated as if it were filed on the same day as the parent application.  The date that the parent application was filed is the "effective filing date" even though the application may have been filed months or years later.  The effective filing date determines whether certain items constitute prior art that can be used to invalidate a patent. Here, the '936 patent application was filed as a continuation in part of U.S. Patent No. 6,834,768 and claims priority to that patent.

I will now explain to you ITT's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

**Defendants' Proposed Instruction to Section 7:** [15]

Patent invalidity is a defense to patent infringement.  Even the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that ITT bears the burden of proving that it is highly probable that the claims are invalid.

In making your determination as to invalidity, you should consider each claim and each ground for invalidity separately. [16]

---

[15]    Model Patent Jury Instructions, "5.1 Invalidity – Generally," June 17, 2009 at p. 33.

[16]    *See* Charge of the Court in *Orion IP, LLC v. Mercedes-Benz, et al. Hyundai Motor America* (Civil Action No. 6:05-CV-322), pp. 14-26 (D.E. 574) ; Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc. et al.* (Case No. 2:06CV272), pp. 21-32 (D.E. 658); Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 14-24 (D.E. 376).

### 7.1     Anticipation for Lack of Novelty

A patent claim is invalid if the claimed invention is not new.  For a claimed invention to be invalid on the basis of anticipation because it is not new, all of its elements must be in a single previous device or method, or described in a single previous publication or patent.  These items are called "prior art references."  If a patent claim is not new, we say it is "anticipated" by a prior art reference.  You may not combine two or more prior art references to prove anticipation.  ITT must prove by clear and convincing evidence that the various claims of the patents-in-suit are anticipated by a single item of prior art.

The disclosure in a prior art reference does not have to be in the same words as the claim, but all the elements of the claim must be there, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the field of technology of the patent at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one prior art reference would be able to make and use the claimed invention.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.  Inherency may not be established by probabilities or possibilities.  The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient.

I will now explain the different ways in which ITT can show that the various claims of the patents-in-suit are not new.

**Plaintiff's Proposed Instructions for Sections 7.1.1 and 7.1.2**

### 7.1.1   Anticipation by Printed Publication or Prior Patent

A patent claim is invalid if the invention defined by that claim was described in a printed publication or patented in the United States or foreign country before it was invented by the

patent applicant, or more than one year prior to the effective filing date of the United States patent application.  Printed publications may include issued patents.

A printed publication or patent will not be an anticipating prior art reference unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to enable one of ordinary skill in the field of technology to practice the invention without undue experimentation.  Factors to be considered in determining whether a disclosure would require undue experimentation include:

(1)      the quantity of experimentation necessary;

(2)      the amount of direction or guidance disclosed in the patent or publication;

(3)      the presence or absence of working examples in the patent or publication;

(4)      the nature of the invention;

(5)      the state of the prior art;

(6)      the relative skill of those in the field of the technology;

(7)      the predictability of the art; and

(8)      the breadth of the claims.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

A United States patent that was filed before the inventors of the patents-in-suit invented one of their claimed inventions is prior art with respect to those claimed inventions as of the date

the United States patent was filed.  In other words, a U.S. patent can be prior art as of its filing date if it was filed before the inventors of the patents-in-suit invented their inventions, even if the patent did not actually publish or issue until after the inventors invented their inventions.

### 7.1.2    Anticipation by Public Knowledge or Use

A patent claim is invalid if the invention recited in that claim was publicly known or used in the United States by someone other than the inventor before the patent applicant invented it, or more than one year before the effective filing date of the United States patent application.

Private or secret knowledge, such as knowledge confidentially disclosed within a small group, is not enough to invalidate a patent claim.  A prior public use may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person.  Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

### 7.1.3    Anticipation by Prior Invention

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress or conceal the invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose.  Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

A patentee who is not the first to reduce to practice can still be the first to invent if he can show two things:

(1)     that he conceived of the invention before the other party conceived of his invention; and

(2)     that he exercised reasonable diligence in reducing his invention to practice, from the time just before the other party conceived, to the time he reduced to practice.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is to be applied in practice.

Reasonable diligence means that the inventor worked continuously in the United States on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

**Plaintiff's Proposed Instruction for Section 7.1.4:**

**7.1.4    Anticipation by Prior Sale or Offer for Sale[17]**

The sale or offer for sale in the United States of an invention may be prior art to a patent claim describing the invention if the invention was sold or offered for sale more than one year before the application for the patent was filed.  This is known as the on-sale bar.  The date of invention for the patent claims is irrelevant to this category of prior art.

In order for there to be an offer for sale, two requirements must be met.  First, the invention must have been the subject of a commercial offer for sale in the United States.  Even a single offer for sale to a single customer may be a commercial offer, even if the customer does not accept the offer.  The on-sale bar is not limited to sales by the inventor, but may result from sales or offers for sale of a thing by a third party that anticipate the invention.  Second, the

---

[17] Charge of the Court in *Virnetx, Inc. v. Microsoft Corporation* (Civil Action No. 6:07-CV-80), pp. 17-18.

invention must be "ready for patenting."  An invention is ready for patenting if the invention for sale has been developed to the point where there was reason to expect that it would work for its intended purpose.  The invention may be ready for patenting even if it is not ready for commercial production or has not been technically perfected.

ITT must prove anticipation by prior sale or offer for sale by clear and convincing evidence.

**Defendants' Proposed Instruction for Sections 7.1.1, 7.1.2 and 7.1.4:**

**7.1.1/7.1.2/7.1.4: Anticipation – Statutory Bars.** [18]

ITT may prove that the Asserted claims of the Patents-in-Suit are invalid by showing that it is highly probable that each such claim failed to meet one of several statutory provisions in the patent laws.  These provisions are called "statutory bars."  For a patent claim to be invalid because of a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the effective filing date of the patent application.

For the '882 Patent, the filing date is April 25, 1996.  For the '183 Patent, the filing date is February 6, 1998.  For the '662 Patent, the filing date is April 22, 1998.  For the '767 Patent, the filing date is April 18, 1998.  For the '936 Patent, the filing date is February 4, 2004.  For the '437 Patent, the filing date is July 2, 1996.

Here is a list of ways ITT can show that the patent application was not timely filed, that is, filed within one year of the occurrence of any of the following events:

- if the claimed invention was already patented or described in a printed publication anywhere in the world before a date that is one year before the effective filing date of

---

[18]     Model Patent Jury Instructions, "5.7 Anticipation – Statutory Bars," at pp. 43-44..

patent application.  A reference is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find;

• if the claimed invention was already being publicly or commercially used in the United States before a date that is one year before the effective filing date of the patent application and that use was not primarily an experimental use controlled by the inventor to test whether the invention worked for its intended purpose;

• if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before a date that is one year before application filing date.  The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field of the invention to make and use the invention based on them;

• if the claimed invention was already described in another published U.S. patent application or issued U.S. patent that was based on a patent application filed before the date of invention;

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference or (2) implicitly disclosed in a single prior art reference as viewed by one of ordinary skill in the field of the invention.  The disclosure in a reference does not have to be in the same words as the claim, but all of the requirements of the claim must be described in enough detail, or necessarily implied by or inherent in the reference, to enable someone of ordinary skill in the field of the invention looking at the reference to make and use at least one embodiment of the claimed invention.

A prior art reference also invalidates a patent claim when the claimed invention necessarily results from practice of the subject of the prior art reference, even if the result was unrecognized and unappreciated by one of ordinary skill in the field of the invention.

If you find a patent claim failed to meet a statutory bar, you must find the patent claim invalid.

## 7.2    Corroboration of Oral Testimony[19]

Oral testimony alone is insufficient to prove prior invention or that something is prior art. A party seeking to prove prior invention or prior art also must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness, or a witness testifying on behalf of an interested party.  This includes any individual or company testifying that his invention or its invention predates the patents-in-suit.  Documentary or physical evidence that is made contemporaneously with the inventive process by someone other than the alleged prior inventor provides the most reliable proof that the alleged prior art inventor's testimony has been corroborated.  For any oral testimony that a party has put forth alleging that a particular event or reference occurred before the filing date of the patents-in-suit, that party must also have provided some sort of corroborating evidence that agrees with that oral testimony.  If you find the party has not corroborated the oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.

---

[19] *See* Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 14-15.

If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony. In making this determination, you should consider the following factors:

(1)     The relationship between the corroborating witness and the alleged prior user;

(2)     The time period between the event and this trial;

(3)     The interest of the corroborating witness in the subject matter of this suit;

(4)     Contradiction or impeachment of the witness's testimony;

(5)     Extent and detail of the corroborating witness's testimony;

(6)     The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

(7)     Probability that a prior use could occur considering the state of the art at the time; and

(8)     Impact of the invention on the industry, and the commercial value of its practice.

### 7.3     Obviousness[20]

In this case, ITT contends the claims SHURflo's Patents-in-Suit patent are invalid as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the application was filed.

**Plaintiff's Proposed Instruction:[21]**

This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

---

[20] Model Patent Jury Instructions, at pp. 47-50.
[21] *Id*. pg. 47.

**Defendant's Proposed Instruction:** This means that even if all the requirements of the claim cannot be found in a single prior art reference or prior invention that would anticipate the claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.[22]

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art.  Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness. Teachings, suggestions, and motivations may be found in written references including the prior art itself.

However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any

---

[22]    *See OddzOn Prods. V. Just Toys,* 122 F.3d 1396, 1403 (Fed. Cir. 1997) ("The PTO's regulations also adopt this interpretation of the statute. 37 C.F.R. § 1.106(d) (1996) ("Subject matter which is developed by another person which qualifies as prior art only under 35 U.S.C. § 102(f) or (g) may be used as prior art under 35 U.S.C. § 103.").  Although the PTO's interpretation of this statute is not conclusive, we agree with the district court that it is a reasonable interpretation of the statute.")

need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

(1)      Whether ITT has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

(2)      Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

(3)      Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

(1)     You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

(2)     You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention. Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned. Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

(3)     You must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A.     Factors tending to show non-obviousness:

(1)     commercial success of a product due to the merits of the claimed invention;

(2)     a long-felt, but unsolved, need for the solution provided by the claimed invention;

(3)     unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)     copying of the claimed invention by others;

28

(5)       unexpected and superior results from the claimed invention;

(6)       acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention; and

(7)       disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious.

(8)       other evidence tending to show nonobviousness.

B.      Factors tending to show obviousness

(1)       independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(2)       other evidence tending to show obviousness.

You may consider the presence of any of the factors A.1-8 as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. And you may consider the presence of the factors B.1-2 as an indication that the claimed invention would have been obvious at such time.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

ITT must prove that it is highly probable that a claimed invention was obvious.  If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

### 7.3.1   Scope and Content of Prior Art[23]

---

[23] Model Patent Jury Instructions, p. 55 (modified).

**Plaintiff's Proposed Instruction**: SHURflo and ITT disagree on whether certain prior art references should be included in the prior art you use to decide the validity of the asserted claims of the Patents-in-Suit.  To qualify as prior art relevant to a patent, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.  Remember that prior art is not limited to patents and published materials, but also includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

### 7.3.2   Differences Over the Prior Art[24]

In reaching your conclusion about whether or not the asserted claims would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the prior art references and the claimed requirements.

### 7.3.3   Level of Ordinary Skill[25]

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention.

You should consider all of the evidence introduced at trial in making this decision, including:

(1)     the levels of education and experience of persons working in the field;

(2)     the types of problems encountered in the field; and

(3)     the sophistication of the technology.

---

[24] Model Patent Jury Instructions, p. 56 (modified).
[25] Model Patent Jury Instructions, p. 57 (modified).

**Defendants' Proposed Instruction for Section 7.4**

**7.4      Written Description**: [26]

ITT contends that claim 11 of the '437 Patent is invalid because the patent fails to provide an adequate written description of the claimed invention.  ITT must prove that it is highly probable this claim lacked an adequate written description.

The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention of the claim, even though the description might not use the exact words found in the claim.  The written description is adequate if it shows that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added during the prosecution of the application.  It is not necessary that each and every aspect of the claim be explicitly discussed, as long as a person of ordinary skill would understand that any aspect not expressly discussed is implicit in the patent application as originally filed.  If you find that claim 11 of the '437 Patent lacked an adequate written description, you must find the claim invalid.

## 8.      DAMAGES[27]

I have now instructed you as to the law governing Plaintiff's claims of patent infringement and Defendants' claims of invalidity.  If you find that Defendants have infringed a

**Defendants' Proposed Instruction :** valid claim of the '882, '183, '662, '767, '936, or '437

---

[26]      Model Patent Jury Instructions, "5.2  Written Description," June 19, 2009, at p. 34.

[27] Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 16-19.

Patents, then you must determine what damages ITT must pay to SHURflo for that infringement. If, on the other hand, you find that ITT has not infringed a **Defendants' Proposed Instruction :** valid claim of the '882, '183, '662, '767, '936, or '437 Patents, then SHURflo is not entitled to any damages, and you should not make any findings about damages for that claim.

The fact that I am instructing you about damages does not mean that SHURflo is or is not entitled to recover damages.  You should not interpret the fact that I have given instructions about SHURflo's damages as an indication any way that I believe that SHURflo should, or should not, win this case.  I am instructing you on damages only

**Plaintiff's Proposed Instruction:** so that you will have guidance in the event you decide that Defendants is liable and that SHURflo is entitled to recover money from Defendants.

**Defendants' Proposed Instruction:** to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue

### 8.1    Date Damages Begin

**Plaintiff's Proposed Instruction to Section 8.1:**[28]

SHURflo can recover damages for infringement that occurred only after SHURflo gave notice of its patent rights, if any.  It is SHURflo's burden to prove by the preponderance of the evidence standard it gave notice.

SHURflo can give notice in two ways.  The first way is to give notice of the public in general.  SHURflo can do this by ensuring that SHURflo as well as any licensees who use the patented invention placed the word "patent" or the abbreviation "PAT" with the number of the

---

[28] AIPLA Model Instruction 12.1 (2008) (modified); *A.C. Aukerman Co. v. R.L. Chaides Construciton Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc).

patent on substantially all the products that were sold that included the patented invention.  This type of notice is effective from the date that SHURflo and any licensees began to mark substantially all of their produces that use the patented invention with the patent number.  If SHURflo or its licensees did not mark substantially all of their produces that use the patented invention with the patent number, SHURflo did not prove notice in this way.

A second way that SHURflo can provide notice of a patent is to tell ITT that ITT is infringing the patent and to identify ITT's product or products that it claims are infringing.  This type of notice is effective from the date given.

As I said, SHURflo may recover damages only from the time that it gave notice of the patent, either by the marking of products or by telling ITT of the claimed infringement.  If you find that SHURflo did not do either of these before beginning this lawsuit, then SHURflo can only recover damages for infringement, if any, that occurred after it sued ITT on February 26, 2008.

**Defendants' Proposed Instruction to Section 8.1:**[29]

The amount of damages SHURflo can recover is limited to those acts of infringement by ITT that occurred after SHURflo gave ITT notice that it infringed the Patents-in-Suit.  Notice of infringement can be actual or constructive, and I will explain in a moment what that means.

Actual notice means that SHURflo communicated to ITT a specific charge of infringement of the Patents-in-Suit by the accused devices.  This notice is effective as of the date

---

[29]  Model Patent Jury Instruction, "6.3 Damages – When Damages Begin," June 17, 2009 at pp. 60-61.

given.  SHURflo has the burden of establishing that it is more probable than not that ITT received notice of infringement.

Constructive notice means that SHURflo complied with the marking requirement of the patent law.  "Marking" means that substantially all of the products made, offered for sale, or sold under the Patents-in-Suit are marked to display the word 'patent' or the abbreviation 'pat.', together with the number of the patent.  SHURflo has the burden of establishing substantial compliance with the marking requirement.  To do so, SHURflo must show it is more probable than not that substantially all of the products it made, offered for sale, or sold under the Patents-in-Suit were marked, and that SHURflo made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the Patents-in-Suit marked substantially all of their products.

Your job is to calculate damages from the date ITT received either actual or constructive notice, whichever was first.  You should not award damages for any infringement by ITT occurring before it first received notice of the Patents-in-Suit.

**Plaintiff's Proposed Instructions for Sections 8.2 and 8.3**

**8.2      Reasonable Royalty – Generally[30]**

The patent laws specifically provide that the amount of damages that ITT must pay SHURflo for infringing SHURflo's patents may not be less than a reasonable royalty for the use that ITT made of SHURflo's inventions.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to use the claimed invention.  The royalty payment generally reflects the value of the use

---

[30] Charge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 16-19.

of the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical arms-length negotiation between SHURflo, and a company in the position of ITT on the eve of infringement, with both sides to this negotiation willing to enter into a license and both sides to this negotiation operating under the assumptions that the patents are valid, the patents are infringed, and the licensee would respect the patents.

You are to decide what a reasonable royalty would be, based on circumstances as of the time just before ITT began selling or using the patented inventions.  You may consider any actual profits made by ITT and any commercial success of the patented inventions, but the amount of those profits is not determinative on the issue of what is a reasonable royalty.

Although the relevant date for the hypothetical reasonable royalty negotiation is the date that the infringement began, you may consider in your determination of reasonable royalty damages any evidence with respect to the expectations for the future that the negotiators had as of the eve of infringement and any actual profits by ITT after that time, and any commercial success of the patented invention in the form of sales of the patents or infringing product after that time.  You may only consider this information, however, if it was foreseeable at the time the infringement began.

SHURflo has the burden to prove by a preponderance of the evidence that it suffered the damages it seeks.  While SHURflo is not required to prove damages with mathematical precision, it must prove its damages with reasonable certainty.  SHURflo is not entitled to damages that are speculative.  SHURflo's proof of damages must have a sound economic basis.

**8.3      Reasonable Royalty – Factors**

In deciding what is a reasonable royalty, you may consider the factors that SHURflo and ITT would consider in setting the amount ITT should pay.  I will list for you a number of factors

you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

(1)     Any royalties received by SHURflo or its predecessors for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

(2)     Any rates paid by ITT for the use of other patents comparable to the patents-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive; or as restricted or unrestricted in terms of territory, or with respect to the parties to whom the product may be sold.

(4)     Whether or not SHURflo or any of its predecessors had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the inventions or by granting licenses under special conditions designed to preserve that exclusivity.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business.

(6)     The effect of selling the patented inventions in promoting sales of other products or inventions of ITT; the existing value of the inventions to SHURflo as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the hypothetical license.

(8)     The established profitability of the inventions; their commercial success; and their current popularity.

(9)     The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

(10)    The nature of the patented inventions, the character of the commercial embodiment of the inventions as owned and produced by SHURflo, and the benefits to those who have used the inventions.

(11)    The extent to which ITT has made use of the patented inventions and any evidence that shows the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

(13)    The portion of the profits that is due to the patented inventions, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by ITT.

(14)    Expert opinions as to what a reasonable royalty would be.

(15)    The amount that a licensor such as SHURflo and a licensee such as ITT would have agreed upon if both parties had been reasonably and voluntarily trying to reach an agreement.

In addition, it is proper for you to consider any economic or business factors that normally prudent business people would, under similar circumstances, reasonably take into consideration in negotiating the hypothetical license.

**Defendants' Proposed Instruction for Sections 8.2 and 8.3:**

**8.2/8.3 Reasonable Royalty – Definition:** [31]

The amount of damages must be adequate to compensate SHURflo for the infringement, but it may not be less than a "reasonable royalty."  At the same time, your damages determination must not include additional sums to punish ITT or to set an example.[32]

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

- Licenses or offers to license the patent at issue in this case
- Licenses involving comparable patents
- The licensing history of the parties

---

[31]     Model Patent Jury Instructions, "6.6 Reasonable Royalty – Definition," June 17, 2009 at p. 65-66.

[32]     Model Patent Jury Instructions, "6.1 Damages – Generally," at p. 58.

- Licensing practices in the relevant industry
- Whether the patent owner had an established policy of refusing to license the patent at Issue.
- The relationship between the patent owner and alleged infringer, including whether or not they were competitors
- The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit
- Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives.
- The portion of the alleged infringer's profit that should be credited to the invention as distinguished from nonpatented features, improvements or contributions.
- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

### 8.4     Entire Market Rule[33]

The entire market rule allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the entire product.  So, if you find that SHURflo has proven that customers demanded an entire accused product because of the patented feature, you may award damages based on the entire value of the product.  However, if you find that customer demand for the product is not based on the patented feature, you should award damages based on the value of the patented feature and not the value of the entire product.

### 9.     INSTRUCTIONS FOR DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

---

[33] Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 6.4 (1993) (modified).

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.  You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, and other organizations stand equal before the law and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you regarding your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent

recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.  After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to deliberate.

**Appendix A**
**Glossary of Patent Terms and Claim Constructions[34]**

| Terms | Definition |
|---|---|
| Application | The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO"). |
| Claims | Claims are the numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.  Claims can be independent or dependent.  An independent claim is self-contained.  A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim. |
| Comprising | The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising." "Comprising" means "including" or "containing."  A claim that uses the word "comprising" is not limited to products having only the elements that are recited in the claim limitations, but also covers products that have all of the elements and add additional elements without changing the required limitations.<br>　　Take as an example a claim that covers a table.   If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.   However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table. |
| License | Permission to use or make the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration. |
| Office Action | Communication from the patent examiner regarding the patent application. |

---

[34]　　The Parties  reproduce here the constructions from this Court's claim construction order. By including the Court's constructions, the Parties do not waive their right to argue on appeal the constructions they advanced during the litigation.   To the extent necessary to preserve their appeal rights, the Parties hereby contend that the jury instructions should include each of the constructions that the Parties advanced during the litigation, but which this Court rejected.

| Terms | Definition |
|---|---|
| Patent Examiners | Personnel employed by the United States Patent and Trademark Office ("PTO") who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable over the prior art considered by the examiner and whether the disclosure adequately describes the invention. |
| Patent Owner | The patent owner may be the original applicant inventor or any assignee who has acquired the patent by an assignment. |
| Prior art | **Plaintiff's Proposed Definition:** Knowledge of the invention either prior to the invention by the applicant or more than a year prior to the effective filing date of his/her patent application.<br><br>**Defendants Proposed Definition:**[35] Prior art is not art as one might generally understand the word art.  Rather, prior art is a technical term relating to patents.  In general, it includes things that existed before the claimed invention and might typically be a patent or a printed publication. |
| Prosecution/File history | The written record of proceedings in the United States Patent and Trademark Office ("PTO") between the applicant and the PTO.  It includes the original patent application and later communications between the PTO and the applicant.   The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during the course of this trial. |
| **Plaintiff's Proposed Instruction:**[36]<br><br>References | Prior art patents and publications used to determine patentability. |
| Specification | The specification is the information, which appears in the patent and concludes with one or more claims.   The specification includes the |

---

[35]  Model Patent Jury Instructions, at p. 11.
[36]  Defendants object to this entire definition.  In the event that the Court overrules Defendants' objection, Defendants request the following definition: Any item of prior art used to determine patentability.  *See c*harge of Court in *Soverain Software, LLC v. Newegg, Inc.*, (Civil Action No. 6:07-CV-511), pp. 28.

| Terms | Definition |
|---|---|
|  | written text, the claims and the drawings.   In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it.   The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention. |
| Ordinary Skill in the Art | **Plaintiff's Proposed Definition:** From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art." This hypothetical person is presumed to be aware of all of the prior art and knowledge that existed in the field during the relevant time period.   The skill of the actual inventor and experts is irrelevant, because they may possess something that distinguishes them from workers of ordinary skill in the art.   Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.<br><br>**Defendants' Proposed Definition:** The level of experience, education and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application. |

| U.S.  Patent No.  6,048,183 | |
|---|---|
| **Terms** | **Court's Construction** |
| the ratio, R3, of the difference between the inlet valve center point and the valve plate inlet center point to R2 is at least about 0.15<br><br>(Claim 10) | the ratio R3 (i.e., the difference between the inlet valve center point and the valve plate inlet center point divided by the ratio R2) is greater than 0.14 |

| R2 is in a range of 1.25 to about 1.45<br><br>(Claim 11) | the ratio R2 (i.e the value of the inlet valve radius divided by the value of the valve plate inlet radius) is between 1.25 and 1.459999 |
|---|---|
| R3 is in a range of about 0.15 to about 0.40<br><br>(Claim 12) | the ratio R3 (i.e., the difference between the inlet valve center point and the valve plate inlet center point divided by the ratio R2) is in the range of 0.140001 to 0.409999 |

| U.S.  Patent No.  5,791,882 ||
|---|---|
| **Terms** | **Court's Construction** |
| generally annular region<br><br>(Claim 12) | a ring-shaped region or zone circumscribing a pumping member |
| the thickness of the generally annular region increases as the region approaches the pumping member<br><br>(Claim 12) | To show infringement, SHURflo must prove that Defendants' product comprises a ring-shaped region with a pumping member generally within the ringed-area.  The ring-shaped area need not be a perfect circle but one should be able to define radial lines emanating from the pump member and extending like radii through the annular region.  For any such radius, when moving along the radius in the generally annular region, the thickness of the generally annular region must increase from a point in the annular region most remote from the pump member, to a point in the annular region most proximate to the pump member.  Furthermore, since the claim states "the thickness of the generally annular region increases as the region approaches the pumping member," the thickness of the region may not decrease along any such radius.  The Court provides this explanation so that the claim term may neither be interpreted so narrowly as to require a "progressive" thickness increase, nor so broadly as to allow thickness to decrease with radial proximity to the pumping member. |
| said pumping member is integral with said diaphragm<br><br>(Claims 15 and 17) | The first pumping member and the diaphragm are molded into a single part. |

| U.S.  Patent Nos.  6,050,662/6,305,767 ||
|---|---|
| **Terms** | **Definition** |
| a plurality of different sets of elements<br><br>('662 Patent, Claim 5)<br>('767 Patent, Claims 1, 11, and 18) | two or more sets of elements where no two sets are the same |

| | |
|---|---|
| each of said different sets of elements being adapted to at least assist in holding one of a plurality of differently configured pumps to the housing<br><br>('662 Patent, Claim 5)<br>('767 Patent, Claims 1, 11, and 18) | each different set of elements is designed or configured to assist in holding one of the differently configured pumps to the housing |
| coupling means acting to cooperate with complementary coupling means of a similar apparatus to couple the apparatus to the similar apparatus<br><br>('662 Patent, Claim 5)<br>('767 Patent, Claim 22) | The phrase 'coupling means' should be construed under 35 U.S.C. § 112 ¶6, and is the projection 84 and projection key 84A disclosed in the specification at col. 3, lines 43-54 and col. 6, lines 39-51, and any equivalents thereof, for performing the claimed function of "coupl[ing] the apparatus to the similar apparatus."  This claim phrase means "each apparatus has coupling means and complementary coupling means, where coupling means on one apparatus works together with complementary coupling means of another apparatus to join or connect the two apparatuses together."  The scope of equivalents is to be determined by the trier of fact.<br><br>The phrase 'complementary coupling means' should be construed under 35 U.S.C. § 112 ¶6, and is the recess 88 and recess key 88A disclosed in the specification at col. 3, lines 43-54 and col. 6, lines 39-51, and any equivalents thereof, for performing the claimed function of "coupl[ing] the apparatus to the similar apparatus."  This claim phrase means "complementary means by which to join at least portions of apparatuses together."  The scope of equivalents is to be determined by the trier of fact. |
| anti-sliding means acting to cooperate with complementary anti-sliding means of a similar apparatus coupled to the apparatus to prevent the apparatus from sliding relative to the similar apparatus<br><br>('662 Patent, Claim 5) | The phrase 'anti-sliding means' should be construed under 35 U.S.C. § 112 ¶6, and is the tab 92 or flap disclosed in the specification at col. 4, lines 16-29 and col. 6, lines 55-67, coupling means defined above and supported in the specification at col. 4, lines 13-14, and any equivalents thereof, for performing the claimed function of "acting to cooperate with complementary anti-sliding means of a similar apparatus coupled to the apparatus to prevent the apparatus from sliding relative to the similar |

|  | apparatus."  This claim phrase means "each apparatus has anti-sliding means and complementary anti-sliding means, where the anti-sliding means of one apparatus cooperates with the complementary  anti-sliding means of another apparatus to prevent either apparatus from sliding when joined or connected together."  The scope of equivalents is to be determined by the trier of fact.<br><br>The phrase 'complementary  anti-sliding means' should be construed under 35 U.S.C. § 112 ¶6, and is the shortened tab 96 or flap disclosed in the specification at col. 4, lines 16-29, complementary coupling means defined above and supported in the specification at col. 4, lines 13-14, and any equivalents thereof, for performing the claimed function of "prevent[ing] the apparatus from sliding relative to the similar apparatus."  This claim phrase means "corresponding means to prevent sliding."  The scope of equivalents is to be determined by the trier of fact. |
|---|---|
| Clips<br><br>('767 Patent, Claims 1 and 6) | devices that assist in holding something by gripping it or pushing against it |
| extending in the first cavity<br><br>('767 Patent, Claim 1) | Spreading forth from the first cavity. |
| Pin<br><br>('767 Patent, Claims 4, 12, 18) | a device not integral with the housing that assists in holding something by insertion |
| the hole being sized and adapted to receive a portion of a pin<br><br>('767 Patent, Claims 4, 12, 18) | the hole being designed or configured to receive a portion of a pin |
| cavity clip<br><br>('767 Patent, Claim 11) | a device within a cavity that assists in holding something by gripping it or pushing against it |
| at least one hole sized and adapted to receive a fastener therein to secure a pump having the first pump configuration to the housing<br><br>('767 Patent, Claim 27) | one or more holes designed or configured to receive a fastener to secure a pump having the first pump configuration to the housing |
| **U.S.  Patent No.  7,225,936** ||
| **Terms** | **Definition** |

| | |
|---|---|
| Boss<br><br>(Claim 1) | a three dimensional body or structure extending from the planar body |
| lever including a second aperture<br><br>(Claim 1) | a moveable extension of the bracket including a second hole or aperture |
| adapted to be received<br><br>(Claim 1) | designed or configured to be received |
| adapted to contact<br><br>(Claim 1) | designed or configured to functionally engage |
| **U.S. Patent No. 5,833,437** ||
| **Terms** | **Definition** |
| plurality of ribs extending inwardly<br><br>(Claim 1) | Two or more members extending into the pump housing |
| impeller assembly operatively coupled to said motor<br><br>(Claims 1, 11) | a rotating impeller apparatus coupled directly or indirectly to the pump motor so that they are operable together |
| dual inlet assembly<br><br>(Claim 11) | An apparatus having two inlet ports, each port being capable of providing an inlet for at least one pump. |